# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| SPAY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **C.A. No. 2020-0540-JRS** |
| | ) | |
| STACK MEDIA INC. k/n/a JLC2011, | ) | |
| INC., NICK PALAZZO, P. JEFFREY | ) | |
| LUCIER TRUST, PETER JOHNSON, | ) | |
| CHAD ZIMMERMAN, CARL | ) | |
| MEHLHOPE, JOSH STAPH, | ) | |
| GRAVITAS SECURITIES INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted:  September 28, 2021
Date Decided:  December 21, 2021

John A. Sensing, Esquire and Clarissa R. Chenoweth-Shook, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware and Dylan P. Kletter, Esquire, Anthony J. Boccamazzo, Esquire and Kelsey D. Bond, Esquire of Brown Rudnick LLP, Hartford, Connecticut, Attorneys for Plaintiff SPay, Inc.

William D. Sullivan, Esquire and William A. Hazeltine, Esquire of Sullivan Hazeltine Allinson LLC, Wilmington, Delaware and Peter Skinner, Esquire, Duane Loft, Esquire, David Barillari, Esquire, Lindsey Ruff, Esquire and Anastasia Cembrovska, Esquire of Boies Schiller Flexner LLP, New York, New York, Attorneys for Defendants Stack Media Inc. k/n/a JLC2011, Inc. and Nick Palazzo.

Donna L. Culver, Esquire and Derek C. Abbott, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware and Sean D. Malloy, Esquire and Jennifer D. Armstrong, Esquire of McDonald Hopkins LLC, Cleveland, Ohio, Attorneys for Defendants P. Jeffrey Lucier Trust and Gravitas Securities Inc.

Geoffrey G. Grivner, Esquire and Kody M. Sparks, Esquire of Buchanan Ingersoll & Rooney PC. Wilmington, Delaware, Attorneys for Defendants Peter Johnson, Carl Mehlhope and Josh Staph.

Sidney S. Liebesman, Esquire of Fox Rothschild LLP, Wilmington, Delaware and Stephanie Resnick, Esquire and John C. Fuller, Esquire of Fox Rothschild LLP, Philadelphia, Pennsylvania, Attorneys for Defendant Chad Zimmerman.

**SLIGHTS,  Vice Chancellor**

Plaintiff, SPay, Inc., as buyer, has brought post-closing claims of fraud, breach of fiduciary duty, breach of contract, conversion and unjust enrichment against several individuals and affiliated entities, as sellers, following SPay's acquisition of substantially all of the assets of Stack Media Inc. n/k/a JLC2011 ("Stack Media" or the "Company") in 2017 (the "Acquisition"). The claims are asserted in Plaintiff's Second Amended Complaint (the "Complaint").

Defendants have moved to dismiss the Complaint under Court of Chancery Rules 12(b)(1), (2), and (6) for want of subject matter and personal jurisdiction and for failure to state viable claims. In part as a response to the motions to dismiss, Plaintiff has moved for an order finding that certain defendants spoliated evidence that otherwise would have been available to Plaintiff as it prepared the Complaint. Among other relief, Plaintiff's spoliation motion seeks a declaration that Plaintiff is entitled to adverse inferences against all defendants that will adhere throughout the litigation—from the Court's consideration of the motions to dismiss *sub judice* through trial and the entry of final judgment.

This Memorandum Opinion addresses certain threshold issues that do not depend upon a resolution of Plaintiff's spoliation motion: whether the Court may exercise subject matter jurisdiction over all claims and personal jurisdiction over certain Defendants; whether Plaintiffs' claims are time-barred under the terms of the

operative Asset Purchase Agreement ("APA");[1] whether the Non-Palazzo Defendants[2] can be held liable for breaches of certain covenants by Stack Media, even though they did not extend the covenants themselves; whether Count Three (breach of certain restrictive covenant agreements) fails against the Non-Palazzo Defendants as a matter of law since they were not parties to those contracts; whether Count Four (seeking declarations that all Defendants are jointly and severally liable to compensate Plaintiff for "Losses" as defined in the APA) is improperly duplicative of Counts Two and Three; and whether all counts fail against Defendant, the P. Jeffrey Lucier Trust (the "Trust"), as a matter of contract and, therefore, as a matter of law.

For the reasons explained below, I have determined that (1) the Court may exercise subject matter jurisdiction over all claims; (2) the Court may exercise personal jurisdiction over Palazzo; (3) Plaintiff's claims for breaches of the covenants in Sections 5.9, 5.12, 5.13 and 6.1 of the APA are not time-barred because the survival clause invoked by Defendants relates only to representations and warranties; (4) Plaintiff's fraud claims are not subject to the APA's contractual

---

[1] The APA is attached to the Verified Second Am. Compl. ("SAC") (D.I. 116) as Ex. A.

[2] As defined by the parties, the "Non-Palazzo Defendants" are the P. Jeffrey Lucier Trust, Peter Johnson, Chad Zimmerman, Carl Mehlhope, Josh Staph and Gravitas Securities, Inc. The "Palazzo Defendants" include Stack Media and Nick Palazzo, who is alleged to be the key actor in the scheme to defraud SPay.

2

survival period limitation; (5) the indemnification provisions of the APA make the Non-Palazzo Defendants potentially liable for breaches of covenants in the APA; (6) Count Three (breach of restrictive covenant agreements) does not fail against the Non-Palazzo Defendants as a matter of law; (7) Count Four's prayer for declaratory judgment is not duplicative of Counts Two and Three; and (8) the *pro rata* cap in the APA does not limit damages against the Trust for the fraud claim, but all other claims against the Trust are subject to the cap and must be dismissed.

## I. BACKGROUND

The individual defendants, Nick Palazzo, Peter Johnson, Chad Zimmerman, Carl Mehlhope and Joseph Staph, were officers of the Company prior to the Acquisition and all signed the APA as "Owners" of the Company.[3] Defendant, the P. Jeffrey Lucier Trust, is alleged to operate for the benefit of Jeffrey Lucier, the former Chairman of the Company.[4] The Trust, along with Defendant, Gravitas Securities, Inc., also signed the APA as "Owners."[5]

SPay entered into the APA and other agreements with Defendants in May 2017, under which Plaintiff agreed to acquire substantially all of the assets of

---

[3] SAC ¶¶ 51, 117; APA at 1; Schedule 1.01.

[4] SAC ¶ 16.

[5] APA at 1; Schedule 1.01.

Stack Media for $8 million.[6] SPay alleges the APA was the product of fraud and breach of contract.[7] It also alleges that Defendants' misconduct continued after the Acquisition when Palazzo and others who remained with Stack Media concealed the Company's business relationship with its largest customer and creditor, Mundo Media Ltd. and its affiliates ("Mundo Media"), in order to prevent Plaintiff from discovering that the Company owed more than $4 million in unpaid bills and was generating negative earnings as a result of the Mundo Media relationship.[8] This concealment began before the APA was signed and continued thereafter through the manipulation of a contractually-owed earn-out payment "and the misappropriation and theft of millions of dollars of cash payments received from Mundo Media after the transaction."[9]

The Complaint comprises eleven counts: Count One asserts contractual fraud against all Defendants; Count Two asserts breach of the APA against all Defendants; Count Three asserts breach of Restrictive Covenant Agreements (as defined in the Complaint) against all Defendants; Count Four seeks a declaratory judgment against all Defendants regarding joint and several liability under the APA; Count Five

---

[6] SAC ¶ 29.

[7] SAC ¶¶ 3, 8–9, 56.

[8] SAC ¶¶ 3, 5, 42.

[9] SAC ¶ 1.

asserts breach of an employment agreement (as defined in the Complaint) against Palazzo; Count Six asserts breach of fiduciary duty against Palazzo; Count Seven asserts unjust enrichment against Palazzo and the Company; Count Eight asserts a breach of the APA against all Defendants for failure to produce certain documents in response to a demand to enforce contractual information rights; Count Nine asserts conversion against Palazzo and the Company; Count Ten asserts breach of the APA's Delaware forum selection clause against Palazzo and the Company for initiating litigation in New York; and Count Eleven asserts breach of the APA's indemnification provision against all Defendants.

## II. ANALYSIS

Although Defendants seek dismissal of the Complaint on several grounds, in this Memorandum Opinion, I address only those grounds that do not implicate Plaintiff's spoliation motion. I leave the balance of the motion to dismiss for resolution after the spoliation issue has been resolved, as detailed in the Order Vacating Discovery Stay for Targeted Spoliation Discovery filed contemporaneously with this Memorandum Opinion.

### A. The Court Has Subject Matter Jurisdiction over All Claims

The Palazzo Defendants argue the Court lacks subject matter jurisdiction to adjudicate all claims, except the breach of fiduciary duty claim, because the claims rest on the common law, not equity, and Plaintiff seeks only common law

remedies.[10]   Plaintiff responds by offering three bases for subject matter jurisdiction—"(i) this matter relates to the sale of assets ratified by shareholder approval pursuant to 8 *Del. C.* § 111 ("Section 111");[11] (ii) Plaintiff seeks equitable relief in the form of rescissory damages; and (iii) Plaintiff asserts a breach of fiduciary duty claim, which allows the exercise of jurisdiction over the entire controversy under the cleanup doctrine."[12]

Our Supreme Court has explained that "the Court of Chancery can acquire subject matter jurisdiction over a cause in only three ways, namely, if: (1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[13]   As noted, Plaintiff invokes each of these recognized bases for the Court's exercise of subject matter jurisdiction over the claims asserted in the Complaint—Plaintiff seeks equitable relief (rescissory damages); Plaintiff seeks to

---

[10] Opening Br. in Supp. of Defs. Stack Media Inc. k/n/a JLC2011, Inc.'s and Nick Palazzo's Mot. to Dismiss Pls.' Second Am. Compl. ("PDOB") (D.I. 135) at 8–10.

[11] 8 *Del. C.* § 111(a) (noting that "[a]ny civil action to interpret, apply, enforce or determine the validity of the provisions of . . . [a]ny . . . agreement . . . by which a corporation agrees to sell, lease or exchange any of its property or assets, and which by its terms provides that 1 or more holders of its stock approve of or consent to such sale, lease or exchange . . . may be brought in the Court of Chancery").

[12] SPay's Answering Br. in Opp'n to Defs. Nick Palazzo and Stack Media Inc.'s Mot. to Dismiss ("PAB to Palazzo Defendants' MTD") (D.I. 143) at 10.

[13] *Candlewood Timber Gp., LLC v. Pan American Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (footnotes omitted).

6

enforce an asset purchase agreement approved by at least one stockholder as authorized by statute (Section 111); and Plaintiff asserts an equitable claim (breach of fiduciary duty). I address only the first two since either allows the Court to adjudicate all claims asserted in the Complaint.

### 1. Rescissory Damages

Plaintiff maintains that, because it seeks the equitable remedy of rescissory damages, the Court may exercise subject matter jurisdiction over all claims.[14] I agree. "The Court of Chancery shall have jurisdiction to hear and determine all matters and causes in equity,"[15] including subject matter jurisdiction over cases involving equitable claims and remedies.[16] "Rescissory damages are 'the monetary equivalent of rescission' and may be awarded where 'the equitable remedy of rescission is impractical.'"[17] They are an equitable remedy that triggers this court's subject matter jurisdiction.[18]

---

[14] SAC ¶ 127; PAB to Palazzo Defendants' MTD at 12–13.

[15] 10 *Del. C.* § 341.

[16] *Vama F.Z. Co. v. WS02, Inc.*, 2021 WL 1174690, at *2 (Del. Ch. Mar. 29, 2021) (observing that "[t]he Court of Chancery . . . acquires subject matter jurisdiction" when "the complaint requests an equitable remedy when there is no adequate remedy at law").

[17] *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 38 (Del. Ch. 2014) (quoting *Lynch v. Vickers Energy Corp.*, 429 A.2d 497, 501 (Del. 1981), *overruled in part on other grounds by Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983)).

[18] *See, e.g.*, *Schultz v. Ginsburg*, 965 A.2d 661, 669 (Del. 2009), *overruled on other grounds by Urdan v. WR Cap. P'rs, LLC*, 244 A.3d 668 (Del. 2020) ("Ordering rescission or awarding rescissory damages are forms of equitable relief."); *Gotham P'rs, L.P. v.*

The Palazzo Defendants counter that "Plaintiff fails to show that rescissory damages are appropriate" in this case.[19] While this court has described rescissory damages as an "exceptional" remedy,[20] Plaintiff has well-pled a basis for that remedy here.[21] Moreover, this court should be reluctant to pass on the viability of claims for equitable relief on the pleadings.[22] Instead, it is typically better to await a declaration of liability before determining the extent to which Chancery's "broad discretion to craft a remedy to address the wrong" should be exercised.[23]

Plaintiff alleges the Company's assets are "now worthless as a result of Plaintiff's unknowing inheritance of the Mundo Media relationship that was used as a vehicle post-closing to either siphon off millions of dollars in outright theft, or to

---

*Hallwood Realty P'rs, L.P.*, 817 A.2d 160, 177–78 (Del. 2002) ("[T]he Court of Chancery should reconsider and award some form or the various equitable remedies available . . . , including rescissory damages . . . ."); *Nagy v. Bistricer*, 770 A.2d 43, 56 (Del. Ch. 2000) ("Only in an equitable action can [the plaintiff] possibly obtain rescission or rescissory damages.").

[19] Reply Br. in Supp. of Defs. Stack Media Inc. k/n/a JLC2011, Inc.'s and Nick Palazzo's Mot. to Dismiss Pl.'s Second Am. Compl. ("Palazzo DRB") (D.I. 149) at 4.

[20] *Strassburger v. Earley*, 752 A.2d 557, 579 (Del. Ch. 2000).

[21] SAC ¶¶ 9, 127

[22] *See Brinckerhoff v. Enbridge Energy Co., Inc.*, 159 A.3d 242, 262 (Del. 2017) (reversing as premature the trial court's pleading stage determination that bases for reformation or rescission of a contract had not been well pled).

[23] *Id.*

run a prohibited side-business for Defendants' benefit."[24]  By seeking rescissory damages, Plaintiff is stating that had it known about the nature and extent of the Mundo Media relationship, it would not have entered into the Acquisition.  Contrary to the Palazzo Defendants' argument, based on the pled facts, rescission is both appropriate and infeasible here—a ripe circumstance for rescissory damages.[25]

The Palazzo Defendants also argue that Plaintiff has not moved with the alacrity required to justify rescissory relief.[26]  But they ignore the fact that "[t]he passage of time" plays less of a role "for rescissory damages than with true rescission.  This is because the passage of time may be what renders rescission impractical and requires the deployment of rescissory damages as the functional equivalent."[27]  With that said, as noted by this court in *In re Orchard Enterprises*, the passage of time is, nevertheless, a relevant consideration when determining whether to award rescissory damages because the Court wants to avoid (1) windfall

---

[24] SAC ¶ 127.

[25] *See Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.*, 855 A.3d 1059, 1072 (Del. Ch. 2003) ("Rescissory damages are designed to be the economic equivalent of rescission in a circumstance in which rescission is warranted, but not practicable.  A solid body of case law so holds.").

[26] Palazzo DRB at 18; *see Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 363845, at *7 (Del. Ch. Jan. 27, 2010) ("[T]he party seeking rescission must move with alacrity.").

[27] *In re Orchard*, 88 A.3d at 41.

awards that would include value casually unrelated to the wrongdoing, and (2) rewarding a plaintiff who attempts to "sit back and test the waters, see how the transaction plays out, and then sue[s] for rescissory damages if the deal turned out well for the other side."[28] Those concerns may or may not be implicated here. But this is not the time to make that determination.[29]

Because Plaintiff has well-pled rescissory damages as a remedy for all claims asserted in the Complaint, the Court may exercise subject matter jurisdiction over all claims.[30]

## 2. Section 111

The Court also has subject matter jurisdiction under Section 111. As noted, that statute provides that the Court of Chancery is vested with jurisdiction "to interpret, apply, enforce or determine the validity of the provisions of . . . [a]ny instrument, document or agreement . . . by which a corporation agrees to sell, lease or exchange any of its property or assets, and which by its terms provides that 1 or

---

[28] *Id.* (internal quotation marks omitted).

[29] *Enbridge Energy*, 159 A.3d at 262.

[30] SAC at 61–62 ("Wherefore, Plaintiff requests judgment against Defendants, jointly and severally, alternatively and/or cumulatively, awarding Plaintiff the following relief: . . . Rescissory damages in an amount to be proven at trial including, but not limited to, the $8,000,000 amount of the purchase price . . . .") (emphasis omitted).

more holders of its stock approve of or consent to such sale, lease or exchange."[31]

Our General Assembly has favored broad-reaching subject matter jurisdiction under Section 111, expressly expanding its scope several times, including as recently as 2016.[32]

The APA states that "the board of directors and shareholders of the Company have approved and declared advisable this Agreement."[33]  It later provides that the "Consent of Company shareholders to sale" was required to be delivered at closing.[34] The Palazzo Defendants argue that statements in a contract's recital and consents attached at closing are never enough to trigger subject matter jurisdiction.[35]  Here

---

[31] 8 *Del. C.* § 111.

[32] *See Salzberg v. Sciabacucchi*, 227 A.3d 102, 129–30 (Del. 2020); *see also* Jeffrey R. Wolters & James D. Honaker, *Analysis of the 2016 Amendments to the Delaware General Corporation Law* 1 (2016), https://www.morrisnichols.com/assets/htmldocuments/ BylinedArticles/Delaware-Analysis-2016_final.pdf ("The 2016 amendments expanded the Delaware Court of Chancery's jurisdiction under Section 111 . . . .  The language of amended Section 111 is also broad enough to confer jurisdiction on the Delaware Court of Chancery if the parties to the asset sale voluntarily require stockholder approval of the transaction; that is, even if the approval or consent is not required by the corporation's governing documents or the DGCL.").

[33] APA at 1.

[34] APA at § 2.12(viii); Schedule 3.3(b) ("Consent of Company shareholders to sale by Company or substantially all assets.").

[35] As support for this proposition, the Palazzo Defendants point to *Urdan v. WR Cap. P'rs, LLC*, 2019 WL 3891720 (Del. Ch. Aug. 19, 2019).  There, the court held that the recitals in a repurchase agreement did not properly incorporate by reference a settlement agreement by simply mentioning the contract.  *Id.* at *13.  The court also held the recitals could not be interpreted as overriding the integration clause in the repurchase agreement.  *Id.* at *14.

again, I disagree. As Plaintiff correctly points out, a provision mandating stockholder approval was not necessary in this contract because the parties already had obtained stockholder approval, as evidenced by the consents.[36] There is no reason to believe that these consents were gratuitous. Moreover, Section 111 confers subject matter jurisdiction upon Chancery to enforce and interpret asset sale agreements that "1 or more holders of its stock approve of or consent to," and the APA makes clear that the "shareholders of the Company have approved . . . this Agreement." A plain language interpretation of the APA dictates the conclusion that subject matter jurisdiction exists under Section 111.

## B. The Court Has Personal Jurisdiction Over Palazzo for All Counts

Palazzo contends the Court lacks personal jurisdiction over him for Counts Five (breach of employment agreement), Six (breach of fiduciary duty), Seven (unjust enrichment), and Nine (conversion).[37] He concedes that he is subject to personal jurisdiction with respect to Plaintiff's claims for fraud, breaches of the APA, and breach of the Restrictive Covenant Agreements—in other words, seven out of the eleven Counts in the Complaint. In response, Plaintiff argues that the

---

Neither of these holdings suggest that the APA's clearly stated requirement for stockholder approval can or should be ignored.

[36] Tr. of Oral Arg. on Defs.' Mots. to Dismiss and SPay, Inc.'s Mot. for Finding of Spoliation and Sanctions (D.I. 170) at 65:17–24.

[37] PDOB at 10.

Court can exercise personal jurisdiction over each claim because "(i) all [of] Plaintiff's claims arise from a single nexus of fact; (ii) Palazzo has pervasive business contacts with Delaware; and/or (iii) he has caused tortious injury in Delaware."[38]

After carefully reviewing the competing arguments, I am satisfied the Court may exercise personal jurisdiction over Palazzo on all counts of the Complaint. "[P]laintiffs need only make a *prima facie* showing, in the allegations of the complaint, of personal jurisdiction . . . ."[39]  And "[t]he Court may exercise its discretion to litigate a claim for which personal jurisdiction would not otherwise exist where the claim is brought along with other claims sufficiently related to that claim to warrant prosecution before a single tribunal."[40]  "Delaware public policy favors Delaware courts assuming personal jurisdiction over parties in order to adjudicate claims which sufficiently relate to other claims which do properly bring the party within those courts' jurisdiction."[41]

---

[38] PAB to Palazzo Defendants' MTD at 15.

[39] *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *5 (Del. Ch. July 14, 2008); *see also id.* (noting that when considering personal jurisdiction, "the record is construed in the light most favorable to the plaintiff").

[40] *Fitzgerald v. Chandler*, 1999 WL 1022065, at *2 (Del. Ch. Oct. 14, 1999).

[41] *Id.* at *4.

Here, all of Plaintiff's claims are sufficiently related for personal jurisdiction purposes, as "all of Plaintiff's claims relate to the same subject matter—concealment of the existence and true nature of the Company's relationship with Mundo."[42] The fact that Palazzo admits to personal jurisdiction for most of the claims against him, all stemming from the same factual nexus, undermines his personal jurisdiction challenge as to the remaining claims.[43]

Given that Palazzo indisputably is subject to the Court's jurisdiction for most of the claims asserted against him, the Court may properly exercise personal jurisdiction over him for all of the remaining claims.

### C. Plaintiff's Breach of Covenant Claims Are Not Barred as Untimely

The APA defines certain of its representations and warranties as "Fundamental Representations."[44] As specified in the APA, these Fundamental Representations include those contained in Sections 3.1, 3.2, 3.4, 3.7, 3.12

---

[42] PAB to Palazzo Defendants' MTD at 16 (summarizing allegations to this effect in the SAC).

[43] The Palazzo Defendants argue that because Counts Five–Seven and Nine are based on post-closing allegations, the claims do not relate to the same subject matter as the other claims. Palazzo DRB at 5. That view of the allegations is too narrow. All of the claims, in some way or another, relate to Defendants' alleged secretion of the Mundo Media relationship—first, the existence of it, and later, the nature of it. Since the Court must construe the record, including the Complaint, in the light most favorable to Plaintiff, it is clear through this lens that all of Plaintiff's claims are factually connected. *See Sprint Nextel Corp.*, 2008 WL 2737409, at *5 ("[T]he record is construed in the light most favorable to the plaintiff.").

[44] *See* APA at § 1.1.

14

and 3.22.[45]   Under Section 7.1 of the APA, all representations except the Fundamental Representations (and Section 3.9) are subject to a survival period such that they expired at "11:59 p.m., Eastern time, on December 2, 2018."[46]

Plaintiff alleges in Count Two that "Defendants have breached the representations, warranties, and covenants in Sections 3.4, 3.7, 5.9, 5.12, 5.13 and 6.1 of the [APA] by failing to disclose the Company's two-way 'agreement' and significant liabilities with Mundo Media."[47]   Sections 5.9, 5.12, 5.13 and 6.1 are not Fundamental Representations, nor are they otherwise specifically carved out in

---

[45] *Id.*

[46] APA § 7.1 ("The representations and warranties of the Company contained in this Agreement and the Closing Certificates shall survive the Closing and continue until 11:59 p.m., Eastern time, on December 2, 2018; provided, however, that (a) the representations and warranties contained in Section 3.1 (*Organization and Good Standing*), Section 3.2 (*Authorization of Agreement*), Section 3.4 (*No Subsidiaries*), Section 3.7 (*Necessary Assets*) and Section 3.22 (*Brokers and Financial Advisors*) shall survive the Closing and continue until 11:59 p.m., Eastern time, on May 2, 2027, (b) the representations and warranties contained in Section 3.12 (*Intellectual Property*) shall survive the Closing and continue until 11:59 p.m., Eastern time, on May 2, 2021, and (c) the representations and warranties contained in Section 3.9 (*Taxes*) shall survive the Closing and continue until 11:59 p.m., Eastern time, on the date that is sixty (60) days after the relevant Governmental Authorities are no longer entitled to assess or reassess Purchaser or the Company in respect of any Taxes arising in respect of the substance of such representation and warranty . . . . Any claim or notice given under this Article VII with respect to any representation or warranty prior to the end of the applicable Survival Period shall be preserved until such claim is finally resolved. The parties agree and acknowledge that the Survival Periods set forth herein, to the extent expressly longer than the three (3) year survival period permitted by Title 10, Section 8106(a) of the Delaware Code, are expressly intended to survive for such longer periods as permitted by Title 10, Section 8106(c) of the Delaware Code.").

[47] SAC ¶ 133.

15

Section 7.1 of the APA.[48] Defendants argue, therefore, that the survival period for Plaintiff's claims for breach of those provisions expired on December 2, 2018. Since Plaintiff did not provide any Claim Notice prior to the expiration of the survival period, and did not file suit until July 1, 2020, Defendants contend the claims are untimely as a matter of contract and, therefore, as a matter of law.[49]

Even a cursory review of the APA reveals that Defendants have erroneously conflated representations and warranties with covenants. The survival provision, by its terms, only applies to "representations and warranties,"[50] but Sections 5.9, 5.12, 5.13 and 6.1 are covenants and a condition to close, not representations and warranties.[51]

This distinction is not immaterial or hyper-technical. The purpose of representations and warranties is to guarantee the truthfulness of a present fact, whereas covenants are promises to perform.[52] It makes perfect sense that parties to

---

[48] *See* APA at §§ 1.1, 7.1.

[49] *See* SAC ¶ 97 ("[O]n June 8, 2020, Plaintiff served the Defendant Company with a claim notice pursuant to Article VII of the Purchase Agreement . . . .").

[50] APA § 7.1.

[51] Article III contains "Representations and Warranties of the Company," Article IV contains "Representations and Warranties of Purchaser," Article V contains "Covenants and Agreements," and Article VI contains "Conditions to Closing." APA at 24, 41–42, 48.

[52] *Representation*, Black's Law Dictionary (11th ed. 2019) ("A presentation of fact . . . made to induce someone to act, esp. to enter into a contract . . . ."); *Covenant*, Black's Law

a transaction would limit the time that alleged breaches of factual representations could be brought without limiting the time a party could bring breaches of an agreement to do or refrain from an act presently or in the future, and many do so.[53] To the extent parties seek to limit contractually when a suit for breach of covenants can be brought, they can accomplish that goal by placing language to that effect in their contract.[54] These parties elected not to do that, and there is no basis in law for

---

Dictionary (11th ed. 2019) ("A formal agreement or promise . . . in a contract or deed to do or not do a particular act; a compact or stipulation.").

[53] *See, e.g.*, *Aircraft Serv. Int'l, Inc. v. TBI Overseas Hldgs., Inc.*, 2014 WL 4101660, at *2–3 (Del. Super. Ct. Aug. 5, 2014) (citing an agreement that states "all covenants and agreements of the parties contained herein shall survive the execution, delivery and consummation of this Agreement until the expiration of the applicable statute of limitations. All representations and warranties of the parties contained herein shall survive the execution, delivery and consummation of this Agreement until the eighteen (18) month anniversary of the Closing Date"); *Pilot Air Freight, LLC v. Manna Freight Sys., Inc.*, 2020 WL 5588671, at *7 (Del. Ch. Sept. 18, 2020) ("All representations and warranties set forth in this Agreement shall survive for a period of 15 months after the Closing . . . All covenants, indemnities and agreements . . . shall survive for three (3) years after the Closing Date (after which such obligations shall terminate) . . . ."). The Court in *Pilot Air* noted that "[t]he Survival clause represents bargained-for 'risk allocation.'" *Id.* at *16 (citing *In re TIBCO Software Inc. S'holder Litig.*, 2014 WL 6674444, at *18 (Del. Ch. Nov. 25, 2014)).

[54] *See, e.g.*, *Kan-Di-Ki, LLC v. Suer*, 2015 WL 4503210, at *6 (Del. Ch. July 22, 2015) ("[T]he APA contains a 'Survival' clause. In that regard, Section 6.3 states that, 'The representations, warranties, covenants and agreements contained herein will survive for the longer of (i) five years, and (ii) the statute of limitations in respect of the subject matter described herein.'"); *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *3 (Del. Ch. July 11, 2011) ("Delaware law does not have any bias against contractual clauses that shorten statutes of limitations because they do not violate the legislatively established statute of limitations, there are sound business reasons for such clauses, and our case law has long upheld such clauses as a proper exercise of the freedom of contract. Consistent with that, prior case law in Delaware has read survival clauses like the one in this case as acting to shorten the statute of limitations and require that suit be brought before

17

this Court to pick up the pen and add that language now.[55]  The default, then, is that

the statutory limitations period applies, not the survival provision in Section 7.1 of

the APA.  And Plaintiff's claims for breach of the APA as to the covenants in

Sections 5.9, 5.12, 5.13 and 6.1 were filed well within the three-year statutory

limitations period.[56]

### D. Plaintiff's Breach of Representations and Warranties Claims Are Not Subject to the APA's Survival Period in the Case of Fraud

Plaintiff alleges fraud against all Defendants in Count One of the Complaint

for making knowingly false representations in Sections 3.4, 3.6, 3.7, 3.8, 3.13, 3.21,

5.9, 5.12, 5.13, and 6.1.[57]  The Palazzo Defendants' Motion to Dismiss challenges

---

the relevant survival period expires."); *Eni Hldgs., LLC v. KBR Gp. Hldgs., LLC*, 2013 WL 6186326, at *7 (Del. Ch. Nov. 27, 2013) ("In Delaware, parties may contractually agree to a period of limitations shorter than that provided for by statute, so long as this shortened period is reasonable.").

[55] *Nemec v. Schrader*, 991 A.2d 1120, 1126 (Del. 2010) ("When [construing a contract], we must assess the parties' reasonable expectations at the time of contracting and not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal.").

[56] *See* 10 *Del. C.* § 8106; SAC ¶¶ 108–09 (detailing the statute of limitations extension given by the Delaware Supreme Court because of the COVID-19 pandemic).  Defendants have not argued that Section 6.1 may be captured within the survival clause's language, "representations and warranties of the Company contained in this Agreement *and the Closing Certificates*."  APA § 7.1 (emphasis added); *see* APA § 2.12(a) ("At the Closing, the Company shall deliver, or caused to be delivered, to Purchaser the following: . . . (v) a certificate dated as of the Closing Date duly executed by the Company certifying that the conditions set forth in Section 6.1(a) and 6.1(b) have been satisfied . . . .").  Therefore, I do not consider that question here.

[57] SAC ¶ 117.

Plaintiff's fraud claim under Sections 3.6, 3.8, 3.13, and 3.21 of the APA on the ground that claims under those provisions are contractually time-barred because they are based on non-Fundamental Representations.[58]

Plaintiff correctly points out, however, that the contractual survival period set forth in Section 7.1 of the APA does not apply to claims for fraud, including contractual fraud, because Section 7.4 of the APA, an exclusive remedy provision,[59] expressly "carves out fraud claims from the indemnification regime."[60] In doing so, the APA "contemplates that at least some actions grounded in fraud can be brought outside the [APA]'s indemnification provisions, and thus, can be timely brought within the statutory—rather than contractual—limitations period."[61] Thus, I cannot

---

[58] PDOB at 14; *see* APA § 7.1.

[59] APA § 7.4 provides that Plaintiff's "sole and exclusive remedy after the Closing with respect to this Agreement shall be pursuant to the indemnification provisions set forth in this Article VII; provided, however, that the foregoing clause of this sentence shall not be deemed a waiver by any party of any right to specific performance or injunctive relief or any right or remedy *with respect to a claim of fraud or intentional misrepresentation*." (emphasis added).

[60] PAB to Palazzo Defendants' MTD at 24; APA § 7.4; *see also Eni Hldgs.*, 2013 WL 6186326, at *16 ("The [agreement], by providing that the indemnification provisions do not constitute the 'sole and exclusive remedy' for fraud, contemplates that at least some actions grounded in fraud can be brought outside the [agreement]'s indemnification provisions . . . .").

[61] *Eni Hldgs.*, 2013 WL 6186326, at *16.

19

say as a matter of law that Plaintiff's fraud claims based on Sections 3.6, 3.8, 3.13, and 3.21 are barred by Section 7.1.[62]

### E. The Non-Palazzo Defendants Can Be Liable for Breach of Covenants by the Company

The Non-Palazzo Defendants note that some sections of the APA, by their terms, only impose obligations on the Company.[63] They also observe that the Owner Defendants[64] only signed to the extent of "his or its respective obligations under Sections 5.7, 5.8, 5.10, and 5.14."[65] With these provisions in mind, the Non-Palazzo Defendants argue they cannot be liable for breaches of other covenants in the APA.

---

[62] *See id.* (noting that interpreting a similar indemnity provision as not reaching contractual fraud claims is "a reasonable reading," and holding that, on a motion to dismiss, the court "must resolve any ambiguity in the contract in [plaintiff's] favor").

[63] *E.g.*, APA § 5.4 ("From and after the Closing Date, *the Company shall*, and shall cause each of its Affiliates to cease using, in any matter, the Trademarks included in the Company Owned IP and all similar or derivative Trademarks and names. Without limiting the foregoing, *the Company shall* take such actions as may be required . . . . *The Company hereby agrees* that, from and after the Closing Date, it shall not . . . apply for, register, or use any of the Trademarks included in the Company Owned IP . . . . From and after the closing date, *Company shall* . . . execute any documents which may be necessary and desirable for Purchaser to effect the foregoing provisions of this Section 5.4.") (emphasis added); APA § 5.6 ("*The Company shall* preserve until the sixth anniversary of the Closing Date all records possessed by the Company. From the date hereof, where there is a legitimate business purpose, *the Company shall* provide Purchaser with access . . . to the books of account and records of the Company . . . .") (emphasis added).

[64] The "Owner Defendants" include all Defendants except for the Company.

[65] APA Signature Pages.

20

The parties focus on Sections 5.4 and 5.6 in their briefing, but this argument would apply to other covenants as well.[66]

Here again, the Non-Palazzo Defendants' argument ignores the indemnification provisions of the APA. Indeed, the Non-Palazzo Defendants omit that the "Owners" (including the Non-Palazzo Defendants)[67] signed the APA with respect to "Article VII," the indemnification section.[68] And importantly, in Section 7.2(a)(ii), the Owners indemnified Plaintiff against losses resulting from "the breach or non-fulfillment of any covenant or other agreement made by the Company."[69] Therefore, even though Sections 5.4, 5.6 and other covenants may only impose performance obligations on "the Company," the Non-Palazzo Defendants agreed to indemnify Plaintiff against losses resulting from the Company's breach or non-fulfillment of those obligations.[70] As a matter of contract,

---

[66] Defs. Johnson, Mehlhope, Staph, Zimmerman, P. Jeffrey Lucier Trust, and Gravitas Sec., Inc.'s Omnibus Reply Br. in Further Supp. of their Mot. to Dismiss ("Non-Palazzo DRB") (D.I. 147) at 28 (briefly making a similar argument regarding Sections 5.9, 5.12, 5.13, and 6.1).

[67] APA at 1; Schedule 1.01.

[68] APA Signature Pages.

[69] APA § 7.2(a)(ii).

[70] Other asset sale agreements analyzed by this court have done the same. *See, e.g.*, *Pilot Air Freight*, 2020 WL 5588671, at *6 ("Seller *and each Owner, jointly and severally*, shall indemnify, defend and hold Purchaser . . . harmless from and against any and all loss, liability, damages, or expense . . . due to: . . . (b) the non-fulfillment of any covenant,

then, the Non-Palazzo Defendants' argument that they are entitled to pleading-stage dismissal of Plaintiff's breach of contract claims based on covenants that only impose obligations on the Company must be rejected.

**F. Count Three (Breach of the Restrictive Covenant Agreements) Does Not Fail as a Matter of Law as to the Non-Palazzo Defendants**

Count Three alleges breach of the Restrictive Covenant Agreements ("RCAs") against all Defendants, even though only the Palazzo Defendants were parties to the RCAs.[71] According to Plaintiff, all Defendants are liable for Palazzo's breach of the RCAs because the Owner Defendants agreed to indemnify Plaintiff for breaches of the APA and other "Transaction Documents," and the RCAs qualify as "Transaction Documents" under the APA.[72] In response, the Non-Palazzo Defendants maintain they have no indemnification obligations under the RCAs because the RCAs are not "Transaction Documents."

---

agreement or other obligation of Seller or Owner under this Agreement . . . .") (emphasis added).

[71] SAC Ex. B ("This Restrictive Covenants and Release Agreement is . . . by and among SPay, Inc. d/b/a/ Blue Star Sports, a Delaware corporation, and Nick Palazzo.") (emphasis omitted); SAC Ex. C ("This Restrictive Covenants and Release Agreement is . . . by and among SPay, Inc. d/b/a Blue Star Sports, a Delaware corporation, and STACK Media, Inc., a Delaware corporation.") (emphasis omitted).

[72] *See* APA § 7.2(a)(i), (ii) (detailing indemnification obligations for breach of representations, warranties, covenants and other agreements "contained in this Agreement or any other Transaction Document").

The definition of "Transaction Documents" includes the APA "and each of the Company Disclosure Schedule, the Bill of Sale, the Assignment and Assumption Agreement and *other documents executed in connection with the consummation of the transactions contemplated by this Agreement.*"[73] Plaintiff argues the RCAs are captured within the emphasized language because they were expressly a "condition and inducement to Purchaser's willingness to enter into [the APA],"[74] and the Company was required to deliver the RCAs to the Plaintiff as a closing condition under Section 2.12(a)(xi) of the APA.[75]

The Non-Palazzo Defendants counter that Plaintiff's interpretation is unreasonable because it places indemnification obligations on the Non-Palazzo Defendants for Palazzo's individual, post-closing actions—a purportedly absurd result.[76] They also argue that the legal canon *ejusdem generis* supports their construction—"when a general term follows a specific one, the general term should

---

[73] APA § 1.1 (emphasis added).

[74] APA at 1 (recitals). The RCAs explicitly state that "[t]he Restricted Party and Purchaser acknowledge and agree that the covenants set forth in [the RCA] are an essential element of the transactions contemplated by the [APA] and that, but for these covenants, Purchaser would not enter into the [APA]." SAC Ex. B at 2–3; SAC Ex. C at 2 (same).

[75] APA § 2.12(a)(xi).

[76] *See* Non-Palazzo DRB at 37 ("The APA does not place any indemnification obligations on the Moving Defendants for Defendant Palazzo's and the Company's individual post-closing obligations to Plaintiff in the course of their continued services, nor did the Moving Defendants intend the term Transaction Documents to be read as such.").

23

be understood as a reference to subjects akin to the one with specific enumeration."[77]

Because the definition specifically lists the Company Disclosure Schedule, the Bill of Sale and the Assignment and Assumption Agreement, the catch-all phrase at the end of the provision, say the Non-Palazzo Defendants, should be limited to those documents "necessary to the consummation of the sale and transfer of the assets of the Company."[78]

While the Non-Palazzo Defendants offer a reasonable construction of the APA, perhaps even a better one, I cannot say that Plaintiff's construction is unreasonable such that Defendants are entitled to dismissal as a matter of law.[79] The express language of the APA and the RCAs affirms that the RCAs were essential to the closing of the Acquisition, so it is likewise reasonable to construe the APA as contemplating that the RCAs would be "executed in connection with the transactions

---

[77] *Brogan v. United States*, 522 U.S. 398, 403 n.2 (1998) (quoting *Norfolk & Western R. Co. v. Train Dispatchers*, 499 U.S. 117, 129 (1991)).

[78] SPay, Inc.'s Br. in Opp'n to Defs. P. Jeffrey Lucier Tr., Johnson, Zimmerman, Melhope, Staph, and Gravitas Sec. Inc.'s Mot. to Dismiss ("PAB to Non-Palazzo Defendants") (D.I. 142) at 37.

[79] *See EMSI Acq., Inc. v. Contrarian Funds,* LLC, 2017 WL 1732369, at *11 (Del. Ch. May 3, 2017) ("Dismissal, pursuant to Rule 12(b)(6) is proper only if the defendants' interpretation is the only reasonable construction as a matter of law.") (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003)); *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996) ("Dismissal is proper only if the defendants' interpretation is the *only* reasonable construction as a matter of law.").

contemplated by [the APA]."[80]  Count Three, therefore, cannot be dismissed on the pleadings.  Extrinsic evidence is needed to construe the definition of "Transaction Documents" as defined in Section 1.1.[81]

## G. Count Four (Declaratory Judgment) Is Not Duplicative

All Defendants argue that Count Four is "wholly duplicative" of Counts Two and Three, and thus fails as a matter of law.[82]  Count Two seeks damages against all Defendants for breach of the APA, and Count Three seeks damages against all Defendants for breach of the RCAs.  Count Four seeks at least $7 million "[a]s a result of Defendants' breaches of the Purchase Agreement," "a declaratory judgment that Defendants jointly and severally owe the Plaintiff $7,000,000," and a declaration that "Defendants shall, jointly and severally, compensate, reimburse, indemnify and hold harmless the Plaintiff for any future 'Losses' incurred in connection with the forgoing conduct."[83]

---

[80] APA § 1.1.

[81] *Vanderbilt Income & Growth Assocs.*, 691 A.2d at 613.

[82] *See, e.g.*, *ESG Cap. P'rs II, LP v. Passport Special Opportunities Master Fund, LP*, 2015 WL 9060982 (Del. Ch. Dec. 16, 2015) (dismissing the declaratory judgment count because "[t]he court has to make the necessary determinations in the course of resolving the claim for breach of contract," so "the declaratory judgment count does not add anything"); *Trusa v. Nepo*, 2017 WL 1379594, at *8 n.71 (Del. Ch. Apr. 13, 2017) ("The declaratory judgment count is either completely duplicative of or asserts the necessary determinations the Court would make in resolving Counts II, III, and IV [for breach of fiduciary duty and dissolution].").

[83] SAC ¶ 163.

In response, Plaintiff argues that Count Four is not duplicative because it asks for a declaration that all Defendants are liable to the extent any Defendant is found liable. In other words, it asks for a broad declaration of joint and several liability and, as such, is not fatally duplicative of Counts Two and Three. I agree. Joint and several liability is not automatically implicated in a finding of breach of contract;[84] rather, it is a tort-based concept.[85] Even if the contracts at issue, by their terms, impose joint and several liability on Defendants, Plaintiff seeks clarity through a declaration that any judgment entered against one Defendant means all Defendants are liable. Because Count Four appropriately asks for a declaration on a point that is not necessarily implicated in Counts Two and Three, the Court will not dismiss Count Four for duplicity at this stage in the litigation.

---

[84] *See* 12 *Williston on Contracts* § 36:4 (4th ed. 2003) ("The rule historically followed in most jurisdictions . . . is that an obligation entered into by more than one party is presumed to be joint. This presumption will not be overcome unless there are either (1) express words to render the obligation several or joint and several . . . ; (2) the terms of the promise considered in light of the surrounding circumstances indicate an intent to be bound severally, or jointly and severally; or (3) there is a statute that declares that every contract, though by its terms joint, is to be considered several as well as joint.") (footnotes omitted); Restatement (Second) of Contracts § 289 (1981) ("Where two or more parties to a contract promise the same performance to the same promisee, they incur only a joint duty unless an intention is manifested to create several duties or joint and several duties.").

[85] *See Leishman v. Brady*, 3 A.2d 118, 120 (Del. Super. Ct. 1938) ("It cannot be denied that when two or more persons owe to another person a common duty, and by a common neglect of that duty, such other person is injured, there is a joint tort with joint and several liability."); *accord.* Restatement (Third) of Torts: Apportionment of Liability § 10 (2000) ("When, under applicable law, some persons are jointly and severally liable to an injured person, the injured person may sue for and recover the full amount of recoverable damages from any jointly and severally liable person.").

26

## H. The Pro Rata Cap Limits Recovery on the Claims Against the Trust Other Than Fraud

The Trust argues that all counts against it should be dismissed because, under the terms of the APA, its liability is capped at $0.[86] In response, Plaintiff argues that the cap does not limit fraud damages against the Trust for several reasons. First, the pro rata share requirement only applies to fraud "on the part of the Company" and not to fraud committed independently by the Owner Defendants.[87] Second, a contractual limitation for recovery on fraud claims is not enforceable as a matter of Delaware law if Defendants were aware of the fraud.[88] Finally, Section 7.2(b)(vii) sets forth a sequence of recovery, not a limitation, and the Owners (including the Trust) are jointly and severally liable for any fraud judgment that exceeds the Pro Rata Share (as defined below).[89]

---

[86] Opening Br. in Supp. of Defs. P. Jeffrey Lucier Tr. and Gravitas Sec. Inc.'s Mot. to Dismiss Pl.'s Verified Second Am. Compl. ("Tr. OB") (D.I. 134) at 36–39; *see* APA § 7.2(b)(iii) (stating that "the total amount of Losses which . . . (b) each Owner (other than Palazzo) shall be obligated to pay the Indemnitees pursuant to Section 7.2(a), Section 7.5, or otherwise hereunder shall not exceed such Owner's respective Pro Rata Cap"); APA § 1.1 (defining Pro Rata Cap as "the amount equal to the product of such owner's Pro Rata Share multiplied by the Transaction Consideration actually paid to the Company"); Schedule 1.01 (defining the Trust's Pro Rata Share as 0%).

[87] APA 7.2(b)(vii).

[88] *See Abry P'rs V, L.P. v. F&W Acq. LLC*, 891 A.2d 1032, 1064 (Del. Ch. 2006).

[89] PAB to Non-Palazzo Defendants at 35.

Plaintiff is correct that, under *Abry*, a bargained-for liability limitation is not enforceable to the extent it purports to limit recovery for fraud if the defendant was aware of the fraud.[90] This means that the pro rata cap would apply only if the Company committed fraud of which the Owner Defendants had no knowledge. Plaintiff, however, has pled that Defendants knowingly participated in the fraud.[91] Because the fraud claim against the Trust depends on whether Plaintiff has well-pled fraud, and the Court has yet to answer that question pending resolution of the spoliation motion, I need not consider Plaintiff's other arguments as to why the fraud claim survives the contractual damages cap.

The other (non-fraud based) claims against the Trust, however, are subject to the cap. Section 7.2(b)(iii) of the APA states:

> Notwithstanding anything to the contrary herein, the total amount of Losses which . . . (b) each Owner (other than Palazzo) shall be obligated to pay the Indemnitees pursuant to Section 7.2(a), Section 7.5, or

---

[90] *Abry P'rs*, 891 A.2d at 1064 ("To the extent that the Stock Purchase Agreement purports to limit the Seller's exposure for its own conscious participation in the communication of lies to the Buyer, it is invalid under the public policy of this State . . . . This will require the Buyer to prove that the Seller acted with an illicit state of mind, in the sense that the Seller knew that the representation was false and either communicated it to the Buyer directly itself or knew that the Company had."); *Express Scripts, Inc. v. Bracket Hldgs. Corp.*, 248 A.3d 824, 830 (Del. 2021) ("The Court of Chancery in *Abry Partners* resolved the tension between Delaware's distaste for immunizing fraud and the need for commerce to proceed in a rational and certain way, by concluding that a contracting party cannot, as a matter of public policy, limit exposure for its own conscious participation in the communication of lies to the Buyer . . . .") (internal quotation marks and ellipses omitted).

[91] SAC ¶¶ 31–45, 49–51, 56, 117.

otherwise hereunder shall not exceed such Owner's respective Pro Rata Cap . . . .[92]

The Pro Rata Cap is defined, "with respect to each Owner, [as] the amount equal to the product of such owner's Pro Rata Share multiplied by the Transaction Consideration actually paid to the Company."[93] In turn, "Pro Rata Share" is defined, "with respect to each Owner, [as] the percentage set forth opposite such Owner's name on Schedule 1.03."[94] With these definitions in hand, Schedule 1.03 reveals the dispositive answer—the Pro Rata Share for the Trust is "0%."[95] Zero percent multiplied by any amount of Transaction Consideration is zero dollars, so the possible damages against the Trust for breach of the APA is zero.

While now-settled Delaware law prevents dismissal of the fraud claim to the extent Plaintiff has well-pled Defendants (including the Trust) were aware of the fraud, the parties otherwise expressly limited the Trust's liability to zero dollars. Moreover, Plaintiff has not meaningfully opposed the Trust's assertion that the pro rata cap applies to the breach of contract claims asserted against it.[96] Counts Three,

---

[92] APA § 7.2(b)(iii). "Owner" is defined to include the Trust. APA at 1; Schedule 1.01.

[93] APA § 1.1.

[94] *Id.*

[95] Tr. OB, Ex. A.

[96] Plaintiff's arguments (rightfully) focus on preventing dismissal of the fraud claim. PAB to Non-Palazzo Defendants at 34–36; *see id.* at 36 ("[T]he Trust alleges that Plaintiff has not alleged damages in 'Counts One—Four and Eight' because the Trust's Pro Rata Share is set at 0%. However, as set forth above, the Trust is liable for its own fraud and its

29

Four and Eleven relate to the breach of the APA and are also subject to the cap.[97]

Thus, all counts against asserted against the Trust, except Count One for fraud, must be dismissed.

## III. CONCLUSION

The Court has determined that: (1) it has subject matter jurisdiction over all claims; (2) it may exercise personal jurisdiction over Palazzo (and all other Defendants) as to all claims; (3) Plaintiff's claims for breaches of Sections 5.9, 5.12, 5.13 and 6.1 of the APA are not time-barred; (4) Plaintiff's fraud claims are not subject to the APA's contractual survival period limitation; (5) the Non-Palazzo Defendants agreed to indemnify Plaintiff for breaches of the APA's covenants, so breach of contract claims relating to those covenants are not subject to dismissal on

---

knowledge of the Company's fraud without limitation. Moreover, the Trust agreed to be 'jointly and severally' liable with Palazzo and the Company separate and apart from any Pro Rata Share limitation to the extent the Company committed fraud.").

[97] Six counts are brought against the Trust: Count One for fraud, Count Two for breach of the APA, Count Three for breach of the RCAs, Count Four for declaratory judgment, Count Eight for breach of the APA, and Count Eleven for breach of the APA. SAC ¶¶ 116–63, 198–209. All counts except Count One relate to breach of the APA. As explained above, Plaintiff argues that the Non-Palazzo Defendants (including the Trust) are liable for breach of the RCAs because they are "Transaction Documents" under the APA. Since the Pro Rata Cap applies to all breaches of the APA and the "Transaction Documents," it applies to Count Three as well. APA §§ 7.2(a)(i), (ii); 7.2(b)(iii). Count Four asks for a declaratory judgment that Defendants are jointly and severally liable for breaches of the APA and RCAs. Thus, all counts (besides Count One) can be dismissed against the Trust.

that ground; (6) Count Three does not fail against the Non-Palazzo Defendants as a matter of law and is not dismissed; (7) Count Four for declaratory judgment is not duplicative of Counts Two and Three and is not dismissed on that ground; and (8) the pro rata cap does not limit damages against the Trust for the fraud claim, but all other claims are subject to the cap and must be dismissed.

A separate order addressing the spoliation motion and outlining next steps has been filed contemporaneously with this Memorandum Opinion.

**IT IS SO ORDERED.**